UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>    Plaintiff,<br><br>v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY, AND NEW H3C TECHNOLOGIES CO. LTD.,<br><br>    Defendant. | Civil Action No. 6:20-cv-00728-ADA<br><br>JURY TRIAL DEMANDED |

### BRAZOS'S SECOND AMENDED COMPLAINT AGAINST HPE AND H3C FOR INFRINGEMENT OF U.S. PATENT NO. 7,519,056

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos"), by and through its attorneys, files this First Amended Complaint for Patent Infringement against defendant Hewlett Packard Enterprise Company ("HPE") and New H3C Technologies Co., Ltd. ("H3C") (collectively, "Defendants"), and alleges:

### NATURE OF THE ACTION

1. This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*, including §§ 271, 281, 284, and 285.

2. Brazos alleges that Defendants infringe U.S. Patent No. 7,519,056 ("the '056 Patent"). Brazos seeks damages and other relief for their infringement of the '056 Patent.

### THE PARTIES

3. Brazos is a limited liability company organized and existing under the laws of Delaware, with its principal place of business at 605 Austin Avenue, Suite 6, Waco, Texas 76701.

4.        Upon information and belief, HPE is a corporation organized and existing under the laws of Delaware, with a regular and established place of business located at 14231 Tandem Boulevard, Austin, Texas 78728. HPE may be served through its designated agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas, 75201.

5.        Upon information and belief, H3C is a corporation formed under the laws of China with a principal place of business at Tower 1, LSH Center, 8 Guangshun South Street, Chaoyang District, Beijing 100102 China. H3C is a provider of digital solutions ranging from digital infrastructure products to digital platforms and end-to-end technical services.

6.        HPE has a "unique partnership" with H3C in which it owns a 49 percent stake in H3C.[1]

7.        HPE has commercial arrangements with H3C to buy and sell HPE branded servers, storage, and networking products. During FY 2020, 2019 and 2018, HPE recorded approximately $737 million, $897 million and $1.3 billion of sales to H3C and $215 million, $202 million and $273 million of purchases from H3C, respectively. Payables due to H3C as of October 31, 2020 and 2019 were approximately $29 million and $39 million, respectively. Receivables due from H3C as of October 31, 2020 and 2019 were approximately $19 million and $32 million, respectively.[2]

---

[1] https://www.hpe.com/us/en/newsroom/press-release/2019/09/hewlett-packard-enterprise-new-h3c-delivers-double-digit-market-share-and-attains-number-one-position-in-second-quarter-of-2019-worldwide-server-revenue-tracker.html; *see also* https://www.sec.gov/ix?doc=/Archives/edgar/data/1645590/000164559020000056/hpe-20201031.htm at 49.

[2] *See* https://www.sec.gov/ix?doc=/Archives/edgar/data/1645590/000164559020000056/hpe-20201031.htm at 138.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

9. This Court has personal jurisdiction over both Defendants. Upon information and belief, Defendants, directly and/or through intermediaries, regularly conduct business and have committed acts of patent infringement and/or have induced acts of patent infringement by others in this Judicial District and/or have contributed to patent infringement by others in this Judicial District, the State of Texas and elsewhere in the United States. The Court's exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice because Defendants have established minimum contacts with the forum with respect to both general and specific personal jurisdiction and have purposefully availed themselves of the privilege of doing business within this District such that they should reasonably and fairly anticipate being brought into court here.

10. This Court has general and specific jurisdiction over HPE. Upon information and belief, HPE has continuous and systematic business contacts with the State of Texas. HPE is registered to do business in the State of Texas, has offices and facilities in the State of Texas, and actively directs its activities to customers located in the State of Texas. HPE, directly and/or through affiliates and/or intermediaries, conducts its business extensively throughout Texas, by shipping, importing, manufacturing, distributing, offering for sale, selling, and/or advertising its products and services in the State of Texas and this Judicial District.  Upon information and belief, HPE is subject to the Court's specific jurisdiction by, among other things, directly or indirectly, making, using, offering to sell, and/or selling in the State of Texas and this Judicial District and/or importing into the State of Texas and this Judicial District infringing products.

11. Upon information and belief, Defendants, directly or through intermediaries, participate in the stream of commerce that, with their knowledge, results in infringing products being made, used, offered for sale, and/or sold in the State of Texas and/or imported into the United States to the State of Texas, including through retailers, distributors, and/or authorized dealers and sales agents in Texas and this Judicial District. Upon information and belief, Defendants, directly or through intermediaries, derive revenues from their infringing acts and the infringing acts of others occurring within the State of Texas and in this Judicial District. Additionally, Defendants, directly or through intermediaries, provide service and support to their customers in the State of Texas and this Judicial District.

12. In addition, or in the alternative, this Court has personal jurisdiction over H3C under Federal Rule of Civil Procedure 4(k)(2) because H3C is not subject to jurisdiction with respect to claims in this complaint in any other state's courts of general jurisdiction and exercising jurisdiction over H3C is consistent with the United States Constitution and laws because H3C has established minimum contacts with the United States as a whole.

13. Venue is proper over defendant H3C in this Court pursuant to 28 U.S.C. § 1391 because, among other things, defendant H3C is a foreign defendant and not a resident in the United States, and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

14. Venue is proper over HPE in this Court pursuant to 28 U.S.C. § 1400(b) because defendant HPE is registered to do business in Texas, and, upon information and belief, HPE has offices in this Judicial District, HPE has transacted business in this Judicial District, and has committed acts of direct and indirect infringement in this Judicial District by, among other things, making, using, distributing, installing, configuring, importing, offering to sell, and selling

products that infringe the Asserted Patent. HPE has regular and established places of business in this Judicial District, as set forth below.

15. HPE maintains a regular and established place of business in this Judicial District, at least at 14231 Tandem Boulevard, Austin, Texas 78728:[3,4]



16. Upon information and belief, HPE conducts business and serves customers from its regular and established place of business in Austin, Texas, in this District. Upon information and belief, HPE's Austin office is located on a 52-acre campus.[5]

17. In October 2019, it was reported that HPE signed a lease for a 27,326-square-foot-space in a 164,714-square-foot office building in North Austin at Paloma Ridge, located at 13620 FM 620 Austin, Texas, 78717.[6]

---

[3] *See* https://www.hpe.com/us/en/contact-hpe.html.

[4] *See* https://goo.gl/maps/mojArn1WxaHcHU8v8; *see also* https://goo.gl/maps/cBjm1De4gVPFMeam9.

[5] *See* https://www2.colliers.com/en/properties/austin-continuum/USA-14231-tandem-boulevard-austin-tx-78728/usa1046778.

[6] *See* https://communityimpact.com/local-news/austin/leander-cedar-park/coming-soon/2019/10/23/hewlett-packard-signs-lease-at-paloma-ridge-on-fm-620/.

18. Upon information and belief, HPE owns at least two properties in Austin, Texas, in this District.[7]

19. HPE maintains additional regular and established places of business in the State of Texas, nearby to this District, including at 11445 Compaq Center West Drive Houston, Texas, 77070, and 6080 Tennyson Parkway, Suite 400, Plano, Texas 75024.[8]

20. HPE's website states that HPE is "a global edge-to-cloud Platform-as-a-Service company . . . that helps customers connect, protect, analyze, and act on all [of the customer's] data and applications wherever they live . . . ."[9] Upon information and belief, HPE designs, manufactures, uses, imports into the United States, sells, and/or offers for sale in the United States products that infringe the Asserted Patent, directly and or through intermediaries, as alleged herein. HPE markets, sells, and/or offers to sell its products and services, including those accused herein of infringement, to actual and potential customers and end-users located in Texas and in this District, as alleged herein.

21. HPE's website permits customers to configure and customize HPE products, including the HPE FlexFabric 5945 Switch Series, and request prices quote from HPE on the configured products.[10] HPE's website also permits users to purchase HPE products directly from HPE's website.[11]

---

[7] *See* http://propaccess.traviscad.org/clientdb/SearchResults.aspx (printout attached as Exhibit B).

[8] *See* https://www.hpe.com/us/en/contact-hpe.html.

[9] *See* https://www.hpe.com/us/en/about.html.

[10] *See, e.g.*, https://h22174.www2.hpe.com/SimplifiedConfig/Welcome (printout attached as Exhibit C).

[11] *See, e.g.*, https://buy.hpe.com/us/en/networking/networking-switches/c/c001013.

22. Upon information and belief, HPE offers trainings and/or certifications to HPE partners, customers, and HPE employees including, *inter alia*, trainings and certifications regarding the sales and/or service of HPE products, including products designed and developed, in whole or in part, by H3C. For example, HPE offers an HPE Certification to HPE employees, customers, and partners that teaches how to "design, implement, and configure complex data center solutions based on the HPE FlexNetwork Architecture."[12]

23. As of August 2020, HPE advertised at least fifteen public job postings for positions at HPE's Austin, Texas office.[13]

## COUNT I
## Infringement of U.S. Patent No. 7,519,056

24. Brazos re-alleges and incorporates by reference the preceding paragraphs 1–23 of this Complaint.

25. On April 14, 2009, the U.S. Patent & Trademark Office duly and legally issued the '056 Patent, entitled "Managing Traffic in a Multiport Network Node Using Logical Ports." A true and correct copy of the '056 Patent is attached as Exhibit A to this Complaint.

26. The '056 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

27. Brazos is the owner of all rights, title, and interest in and to the '056 Patent, including the right to assert all causes of action arising under the '056 Patent and the right to any remedies for the infringement of the '056 Patent, including the exclusive right to recover for past infringement.

---

[12] *See* https://certification-learning.hpe.com/TR/datacard/Course/00908176.

[13] *See* https://www.linkedin.com/jobs/search?keywords=Hewlett%20Packard%20Enterprise&location=Austin%2C%20Texas%2C%20United%20States (printout attached as Exhibit D).

28. The Accused Products that infringe at least one claim of the '056 Patent include but are not limited to HPE's routers and switches that support multiprotocol label switching ("MPLS") traffic management ("TE") functionality, MPLS layer-2 VPN ("L2VPN") capability, and Label Distribution Protocol ("LDP") pseudowire tunnels, including, but not limited to, the HPE FlexFabric 5945 Switch Series[14] (collectively, the "Accused Products").

29. Upon information and belief, HPE and/or H3C make, use, sell, offer for sale, import, and/or distribute the Accused Products in the United States, including within this Judicial District.

30. Upon information and belief, the Accused Products also include products designed and developed by H3C, alone or together with HPE. Such products include but are not limited to HPE FlexFabric 5945 Series switches, HPE FlexNetwork MSR Series routers, and HPE FlexNetwork HSR6800 routers.

31. The Accused Products are configured to perform each element of and infringe at least the exemplary claim 21 of the '056 Patent, which recites:

> A method for managing for managing traffic in a network node that includes multiple physical ports comprising:
>
> establishing a logical port within a network node that includes a binding to a tunnel;
>
> treating the logical port the same as the physical ports of the network node in the forwarding of traffic through the network node,
>
> wherein establishing said logical port includes binding said logical port to a multi-protocol label switched (MPLS) tunnel and a destination IP address and wherein the dynamic MPLS tunnel is an MPLS tunnel that does not specify a particular label switch path (LSP) that is to be used to reach a target destination and wherein the LSP that corresponds to the MPLS tunnel is

---

[14] *See* https://buy.hpe.com/us/en/networking/networking-switches/hpe-flexfabric-5945-switch-series/p/1010907030; *see also* https://support.hpe.com/hpesc/public/docDisplay?docId=a00047323enw.

8

>> dynamically determined by a label distribution protocol (LDP); and
>
> wherein said logical port includes a binding to a virtual circuit (VC) identifier (ID) that is to be used for a VC label in a layer 2 MPLS label stack.

32. The Accused Products are configured to practice a method for managing traffic in a network node that include multiple physical ports.

33. MPLS L2VPN provides point-to-point and point-to-multipoint connections. MPLS L2VPN is an implementation of Pseudo Wire Emulation Edge-to-Edge (PWE3). It offers Layer 2 VPN services over a MPLS or IP backbone. MPLS L2VPN can transparently transmit Layer 2 data for different data link layer protocols such as Ethernet and ATM.[15]

34. MPLS L2VPN network models include the remote connection and local connection models. The remote connection model connects two CEs through a pseudowire (PW) on an MPLS or IP backbone. A CE is a customer edge device directly connected to the service provider network. A PE is a provider edge service provider device connected to one or more CEs. It provides VPN access by mapping and forwarding packets between user networks and public tunnels. An AC is an attachment circuit link between a CE and a PE. A PW is a virtual bidirectional connection between two PEs. A public tunnel is a connection that carries one or more PWs across the MPLS or IP backbone. It can be an LSP tunnel, a GRE tunnel, or an MPLS TE tunnel.[16] *See* Figure A below.

---

[15] *See* https://support.hpe.com/hpesc/public/docDisplay?docId=a00098729en_us.

[16] *See, e.g.*, https://support.hpe.com/hpesc/public/docDisplay?docId=a00098729en_us (MPLS L2VPN Network Models).

9



Figure A

35.     According to HPE, the Accused Products are "a family of high-density, ultra-low latency, and ToR ["top of rack"] switches . . . . Ideally suited for deployment at the aggregation or server access layer of large enterprise data centers, the HPE FlexFabric 5945 Switch Series is also powerful enough for deployment at the core layer of medium-sized enterprises. With the increase in virtualized applications and server-to-server traffic, customers require spine and ToR switches that can meet their throughput requirements. With the HPE FlexFabric 5945, data centers can now support up to 100 Gb per port, allowing high performance server connectivity and the capabilities to handle virtual environments."[17]

36.     The Accused Products are configured to implement VLANs across a service provider network that involves establishing logical ports that have bindings to transport tunnels. These logical ports are then treated the same as physical ports in defining broadcast domains at particular service provider edge devices. Logical ports can be established for layer-2 transport tunnels that use stacked VLAN tunneling and MPLS tunneling. Establishing a logical port that uses stacked VLAN tunneling involves binding a physical port and a stacked VLAN runnel to the logical port. In the Accused Products, the logical port is bound either to a static MPLS tunnel or a dynamic MPLS tunnel and the destination IP address of the destination service provider edge device.

---

[17] *See* https://support.hpe.com/hpesc/public/docDisplay?docId=emr_na-a00053252en_us.

37. Each of the Accused Products are configured to support MPLS traffic management capabilities. For example, the HPE FlexFabric 5945 Switch Series enables scaling of the server edge, with 100GbE, 40GbE. 25GbE, and 10GbE spine and leaf deployment. The HPE FlexFabric 5945 Switch Series solution includes a 48-port of 25 Gb with 8-port of 50 Gb, 32-port of 100 Gb and 2 modular models of respectively 1RU / 2-slot and 2RU / 4-slot.[18]

38. The Accused Products are configured to establish a logical port within a network node that includes binding to a tunnel.

39. For the Accused Products, setting up a remote MPLS L2VPN connection first requires a public tunnel to be bound to a logical port within the network device to carry one or more pseudowires between PE devices. The public tunnel can be a MPLS TE tunnel.[19]

40. The Accused Products are configured to treat the logical port the same as the physical ports of the network node in the forward of traffic through the network node.

41. On information and belief, all HPE switches and routers require a logical interface be configured for each physical interface on that device.

42. The establishing said logical port that the Accused Products are configured to perform includes binding said logical port to a MPLS tunnel and a destination IP address.

43. On information and belief, L2VPN is enabled on an HPE router or switch by first enabling MPLS on the core facing interface of the PE via the MPLS enable command and L2VPN capability is enabled by the 12VPN command.[20]

---

[18] *See* https://support.hpe.com/hpesc/public/docDisplay?docId=a00047323enw.

[19] *See, e.g.*, https://support.hpe.com/hpesc/public/docDisplay?docId=a00098729en_us.

[20] *See, e.g.*, https://support.hpe.com/hpesc/public/docDisplay?docId=a00098729en_us.

44.     The dynamic MPLS tunnel that the Accused Products are configured to bind said logical port to is an MPLS tunnel that does not specify a particular label-switched path (LSP) that is to be used to reach a target destination.

45.     The LDP-signaled LSPs are not traffic engineered LSPs that specify a particular path used to reach a target destination using RSVP. The Label Distribution Protocol dynamically distributes FEC-label mapping information between label-switching routers (LSRs) to establish LSPs.[21]

46.     The LSP that corresponds to the MPLS tunnel is dynamically determined by a label distribution protocol (LDP).

47.     A label distribution protocol is also called a MPLS signaling protocol. A label distribution protocol classifies FECs ("forwarding equivalence classes," which are classes of MPLS grouped packets with the same characteristics), distributes FEC-label mappings, and establishes and maintains LSPs.[22] The MPLS tunnel is dynamically determined using LDP when global and interface MPLS LDP is enabled on the PE device. LDP classifies FECs according to destination IP addresses in IP routing entries, creates FEC-label mappings, and advertises the mappings to LDP peers through LDP sessions.[23] After a LDP peer receives an FEC-label mapping, it uses the received label and the label locally assigned to that FEC to create a LFIB (a table used by the router to forward labelled packets going through the network).[24] When all

---

[21] *See, e.g.*, https://support.hpe.com/hpesc/public/docDisplay?docId=a00098729en_us.

[22] *See, e.g.*, https://support.hpe.com/hpesc/public/docDisplay?docId=a00098729en_us at 3.

[23] *See, e.g.*, https://support.hpe.com/hpesc/public/docDisplay?docId=a00098729en_us at 16–18.

[24] *Id.*

LSRs (from the ingress to the egress) establish a LFIB entry for the FEC, a LSP is established exclusively for the FEC.[25] *See* Figure B below.[26]



Figure B

48.     The logical port that the Accused Products are configured to establish includes a binding to a virtual circuit ("VC") identifier ("ID") that is to be used for a VC label in a layer 2 MPLS label stack.

49.     An attachment circuit[27] is a link between a CE and a PE. As such, it functions as an Ethernet service instance on a Layer 2 Ethernet interface or Layer 2 aggregate interface. It forwards packets that are received on the interface and meet the match criteria of the Ethernet interface to the bound pseudowire.[28] The attachment circuit is bound to the pseudowire over the

---

[25] *Id.*

[26] *Id.*

[27] RFC 4364 specifies an "attachment circuit" is used to refer generally to a means of attaching routers to each other, either using PPP connections, ATM virtual circuits, frame relay virtual circuits, ethernet interfaces, GRE tunnels, Layer 2 Tunneling Protocol (L2TP) tunnels, IPSec tunnels, etc. *See, e.g.*, https://tools.ietf.org/html/rfc4364 (BGP/MPLS IP Virtual Private Networks (VPNs)). HPE switches and routers comply with RFC 4364. *See, e.g.*, https://support.hpe.com/hpesc/public/docDisplay?docId=c03289379.

[28] *See, e.g.*, https://support.hpe.com/hpesc/public/docDisplay?docId=a00098729en_us at 42.

logical port in the final stage of the remote connection establishment of the MPLS L2VPN connection.[29]

50. A label is encapsulated between the Layer 2 header and the Layer 3 header of a packet. It is four bytes long and consists of the following fields:

- Label: 20-bit label value;
- TC: 3-bit traffic class, used for QoS (also called Exp);
- S: 1-bit bottom of stack flag (A label stack can contain multiple labels. The label nearest to the Layer 2 header is called the top label, and the label nearest to the Layer 3 header is called the bottom label. The S field is set to 1 if the label is the bottom label and set to 0 if not.); and
- TTL :8-bit time to live field used for MPLS loop prevention.

A Layer 2 circuit is a point-to-point Layer 2 connection transported using MPLS or other tunneling technology on the service provider's network. On information and belief, the Accused Products are configured to implement Layer 2 circuits in a manner that supports the remote form of a Layer 2 circuit. That is, a connection from a local CE router to a remote CE router. On information and belief, to establish a Layer 2 circuit, LDP is used as the signaling protocol to advertise the ingress label to the remote PE routers. Each Layer 2 circuit is represented by the logical interface connecting the local PE router to the local CE router. On information and belief, a virtual circuit ID is configured on each logical interface. On information and belief, each virtual circuit ID is used for a VC label and uniquely identifies the Layer 2 circuit among all the Layer 2 circuits to a specific neighbor.

51. In view of preceding paragraphs 31–50, the Accused Products are configured to practice each and every element of at least claim 21 of the '056 Patent.

---

[29] *See e.g.*, https://support.hpe.com/hpesc/public/docDisplay?docId=a00098729en_us at 441.

52. Defendants have infringed, and continue to directly infringe, at least one claim of the '056 Patent, literally or under the doctrine of equivalents, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States, including within this Judicial District, without the authority of Brazos. HPE's infringing use of the Accused Products includes its internal use, testing, demonstration and/or configuration of the Accused Products.

53. Upon information and belief, each and every element of at least claim 21 of the '056 Patent is practiced or performed by HPE at least through HPE's internal use and configuration of its own Accused Products, and/or through HPE's testing of the Accused Products, and/or through HPE providing services for the Accused Products, including but not limited to providing installation, deployment, support, demonstrations, and configuration of the Accused Products.

54. For example, upon information and belief, as part of HPE's business, HPE offers, for a fee, training and certification programs to its employees, customers, and partners that teach how to use and/or implement the Accused Products. Upon information and belief, HPE, while teaching others how to use and/or implement the Accused Products, performs demonstrations, and in so doing, practices each and every element of at least claim 21 of the '056 Patent.

55. As of the date of service of the initial complaint, September 1, 2020, HPE has had actual or constructive knowledge of the '056 Patent and has been on notice of its infringement of the '056 Patent and of how the Accused Products infringe the '056 Patent. Notwithstanding this knowledge and notice, since that time, HPE has continued to infringe the '056 Patent, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States.

56. Upon information and belief, H3C has had actual or constructive knowledge of the '056 Patent and has been on notice of its infringement of the '056 Patent and how the Accused Products infringe the '056 Patent since sometime between the date of service of the initial complaint on HPE and June 4, 2021 when Brazos requested review of the source code for the Accused Products. Notwithstanding this knowledge and notice, since that time, H3C has continued to infringe the '056 Patent, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States.

57. Since at least the date of service of the initial complaint for HPE, and at least June 2021 for H3C, through their actions, Defendants, with knowledge of the '056 Patent, have actively and knowingly induced customers, product makers, distributors, retailers, and/or end users of the Accused Products to directly infringe one or more claims of the '056 Patent throughout the United States, including within this Judicial District. The Accused Products, as provided to Defendants' customers and end-users and used as intended and instructed, infringe the '056 Patent. Defendants were and are aware that the normal and customary use by end users of the Accused Products infringes the '056 Patent. Upon information and belief, Defendants' customers and end-users have used and continue to use the Accused Products in the United States in this manner and directly infringe the '056 Patent. Despite Defendants' knowledge of the '056 Patent and knowledge and/or willful blindness that their actions induce infringement by customers and/or end-users, Defendants have made, sold, and/or offered for sale the Accused Products, and are continuing to do so, with the specific intent to actively encourage customers and/or end-users to make, use, sell, offer for sale and/or import one or more Accused Products in a manner that Defendants know to be infringing.

58. Moreover, Defendants have taken and continue to take active steps to induce infringement of at least claim 21 of the '056 Patent, knowing that those steps will induce, encourage, and facilitate direct infringement by customers, product makers, distributors, retailers, and/or end users. Upon information and belief, Defendants such active steps include making or selling the accused products outside of the United States for importation into or sale in the United States, and directing, facilitating, or influencing its or their intermediaries, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or their behalf, to import, sell, or offer to sell the accused products in an infringing manner. Defendants also direct, control, and/or encourage customers' and/or end-users' performance of the claimed steps by taking active steps that include, but are not limited to: making, using, configuring, and selling the Accused Products; instructing end-users to use the Accused Products; creating and disseminating advertising and promotional materials that encourage the use of the Accused Products, including product descriptions, operating manuals, configuration guides, support materials, technical materials, and other instructions on how to implement and configure the Accused Products; and providing training and certification programs that teach and demonstrate how to use and/or implement the Accused Products. Defendants have known that such activities induce end-users to infringe at least claim 21 of the '056 Patent since the date of service of the initial complaint for HPE and at least June 2021 for H3C.

59. Examples of Defendants' manuals, instructional and support materials, and/or configuration guides for the Accused Products, provided by Defendants on their websites, that teach and instruct end-users to use and/or configure the Accused Products in ways that practice the claimed invention, include but not are not limited to:

- https://support.hpe.com/hpesc/public/km/search#q=MPLS;

- https://h20195.www2.hpe.com/v2/Getdocument.aspx?docname=a00049249enw;

- https://support.hpe.com/hpesc/public/docDisplay?docId=a00053252en_us;

- https://www.h3c.com/en/Support/Resource_Center/Technical_Documents/Routers/; and

- https://www.h3c.com/en/Support/Resource_Center/Technical_Documents/Switches/.

60. Defendants' inducement is ongoing. Defendants have continued to induce direct infringement by others, including by instructing end-users regarding the operation and use of the Accused Products in ways that practice the claimed invention, even after being put on actual notice of the infringement of the '056 Patent.

61. Since the date of service of the initial complaint for HPE, and at least June 2021 for H3C, through their actions, Defendants have contributed to, and are contributing to, the infringement of the '056 Patent by having others, including HPE with respect to H3C, sell, offer for sale, or use the Accused Products throughout the United States, including within this Judicial District, with knowledge that the Accused Products infringe the '056 Patent. Defendants have made and/or sold the Accused Products with knowledge that the Accused Products have special features that are especially made or adapted for infringing the '056 Patent and are not staple articles of commerce suitable for substantial non-infringing use. For example, in view of the preceding paragraphs, the Accused Products contain functionality which is material to at least claim 21 of the '056 Patent.

62. The special features include implementing MPLS L2VPN and LDP pseudowire tunnels, which are used in a manner that infringes the '056 Patent.

63. The special features constitute a material part of the invention of one or more claims of the '056 Patent and are not staple articles of commerce suitable for substantial non-infringing uses. The Accused Products have no substantial non-infringing uses.

64. Defendants' direct and indirect infringement have caused, and are continuing to cause, injury to Brazos.

65. Brazos has suffered damages as a result of Defendants' direct and indirect infringement of the '056 Patent in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court.

### JURY DEMAND

Brazos hereby demands a jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Brazos respectfully requests that the Court:

(a) enter judgment that Defendants infringe one or more claims of the '056 Patent literally and/or under the doctrine of equivalents;

(b) enter judgment that Defendants have induced infringement and continue to induce infringement of one or more claims of the '056 Patent;

(c) enter judgment that Defendants have contributed to and continue to contribute to the infringement of one or more claims of the '056 Patent;

(d) award Brazos damages, to be paid by Defendants in an amount adequate to compensate Brazos for such damages, together with pre-judgment and post-judgment interest for the infringement by Defendants of the '056 Patent through the date such judgment is entered in accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. § 284;

(e) declare this case exceptional pursuant to 35 U.S.C. § 285; and

(f) award Brazos its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Dated: August 25, 2021

David M. Stein
Texas State Bar No. 797494
dstein@brownrudnick.com
Sarah G. Hartman
California State Bar No. 281751
shartman@brownrudnick.com
BROWN RUDNICK LLP
2211 Michelson Drive, 7th Floor
Irvine, California 92612
telephone:   (949) 752-7100
facsimile:   (949) 252-1514

Alessandra C. Messing
New York State Bar No. 5040019
amessing@brownrudnick.com
Timothy J. Rousseau
New York State Bar No. 4698742
trousseau@brownrudnick.com
BROWN RUDNICK LLP
7 Times Square
New York, New York 10036
telephone:   (212) 209-4800
facsimile:   (212) 209-4801

Edward J. Naughton
(admitted *pro hac vice*)
enaughton@brownrudnick.com
Rebecca MacDowell Lecaroz
(admitted *pro hac vice*)
rlecaroz@brownrudnick.com
BROWN RUDNICK LLP
One Financial Center
Boston, Massachusetts 02111
telephone:   (617) 856-8200
facsimile:   (617) 856-8201

Respectfully submitted,

*/s/ Raymond W. Mort, III*
Raymond W. Mort, III
raymort@austinlaw.com
THE MORT LAW FIRM, PLLC
100 Congress Avenue, Suite 2000
Austin, Texas 78701
tel/fax:   (512) 677-6825

*Counsel for Plaintiff*
*WSOU Investments, LLC d/b/a*
*Brazos Licensing and Development*