# EXHIBIT Q

```
                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISTRICT OF TEXAS
                            WACO DIVISION

WSOU INVESTMENTS LLC              *    November 23, 2021
                                  *
VS.                               *    CIVIL ACTION NOS.
                                  *
HEWLETT PACKARD ENTERPRISE CO.    W-20-CV-725 thru 730, 783

             BEFORE THE HONORABLE ALAN D ALBRIGHT
                    MARKMAN HEARING (via Zoom)

APPEARANCES:

For the Plaintiff:         Timothy J. Rousseau, Esq.
                           Brown Rudnick LLP
                           Seven Times Square
                           New York, NY 10036

                           Sarah Gabrielle Hartman, Esq.
                           David M. Stein, Esq.
                           Brown Rudnick LLP
                           2211 Michelson Drive
                           Irvine, CA 92612

                           Raymond W Mort III, Esq.
                           The Mort Law Firm, PLLC
                           100 Congress Ave, Suite 2000
                           Austin, TX 78701

For the Defendant:         Michael R. Franzinger, Esq.
                           Sidley Austin LLP
                           1501 K Street, N.W.
                           Washington, DC 20005

                           Barry K. Shelton, Esq.
                           Shelton Coburn LLP
                           311 RR 620 S, Suite 205
                           Austin, TX 78734-4775

Court Reporter:            Kristie M. Davis, CRR, RMR
                           PO Box 20994
                           Waco, Texas 76702-0994
                           (254) 340-6114

     Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.
```

1        (November 23, 2020, 1:37 p.m.)

2        DEPUTY CLERK:  Telephonic scheduling conference in Civil

3   Actions 6:20-CV-725, 726, 727, 728, 729, 730 and 783, all

4   styled WSOU Investments LLC versus Hewlett Packard Enterprise.

5        THE COURT:  Good afternoon.  If I could hear announcements

6   from counsel starting with the plaintiff.

7        MR. STEIN:  Good afternoon, Your Honor.  David Stein from

8   Brown Rudnick for the plaintiff.

9        THE COURT:  Good afternoon.

10       MS. HARTMAN:  Good afternoon, Your Honor.  Sarah Hartman

11  from Brown Rudnick for the plaintiff.

12       MR. ROUSSEAU:  Good afternoon, Your Honor.  Timothy

13  Rousseau also from Brown Rudnick on behalf of the plaintiff.

14       THE COURT:  Okay.  Anyone else for plaintiff?

15       MR. MORT:  Yeah.  This is Ray Mort.  I'm also on the line.

16       THE COURT:  Hello, Mr. Mort.

17       MR. MORT:  How are you doing?

18       THE COURT:  I'm well.  Thanks.

19       And for defendant?

20       MR. FRANZINGER:  This is Mike Franzinger from Sidley

21  Austin on behalf of Defendant HP Enterprise.

22       THE COURT:  Good afternoon to you, sir.

23       Anyone else going to be speaking?

24       MR. SHELTON:  Not speaking, Your Honor, but Barry Shelton

25  is on as well for HP.

1       THE COURT: Very good. Okay. What is it that we need to
2  take up? I'll start with the plaintiff.
3       MS. HARTMAN: Your Honor, this is Sarah Hartman speaking.
4       We had a couple of issues that we've outlined in our
5  report that we just wanted to discuss today, and the first is
6  that defendant has asked for some pre-Markman discovery and we
7  have -- as we've stated in here, we disagree that any such
8  discovery is necessary. They really haven't articulated what
9  they need, including what they would need in an
10 international -- from international discovery or what they need
11 it for. So we do think it's premature and should be stayed
12 until factual discovery opens.
13      THE COURT: Okay. And in response?
14      MR. FRANZINGER: Your Honor, HPE expects to raise a
15 jurisdictional issue of standing, and the public assignment
16 records seem to indicate at least that the plaintiff lacks the
17 right to sue for past damages. Also the assignment records
18 mention things like encumbrances and retained rights that the
19 assignments are subject to. They don't necessarily specify
20 what those are in the public documents. So we think these
21 limit -- at least limit the plaintiff's standing here and we
22 need some discovery, some of which may be international, to
23 explore these issues and get the facts. And the reason that
24 some of it may be international is that these patents have
25 variously passed through owners based in France, Finland and/or

1  Canada, and so we propose to get this discovery started
2  pre-Markman.
3         THE COURT:  Does the standing issue go only to the
4  potential for back damages, or does it go to the ability of the
5  plaintiffs to bring the suit at all?
6         MR. FRANZINGER:  It really depends on what the encumbrance
7  is and retained rights are as to the latter part of that
8  question.  So what we can see from the public documents is that
9  it would at least go to past damages.  There may be more in the
10 documents that aren't public.
11        THE COURT:  Okay.  Well, I'd like you to give me a -- and
12 I'm probably going to allow the efforts to be made
13 internationally, but if you have some better good faith reason
14 to believe that you need these for standing sooner than when I
15 would ordinarily open up discovery, I'd like to hear it now.
16        MR. FRANZINGER:  The basis is just that the issue is
17 jurisdictional and may be dispositive of the case on the basis
18 that standing is always an issue jurisdictional.
19        THE COURT:  Well, sure, but I'm saying, do you have any
20 reason -- do you have any evidence to believe that standing to
21 bring the suit is an issue or not?  Do you have any good faith
22 reason that you would be able to raise that now?
23        MR. FRANZINGER:  The reasons would simply be as stated,
24 that the assignment records do mention that the assignments are
25 subject to encumbrances and retained rights by prior owners,

1  and we need the discovery to explore whether those issues
2  prevent the plaintiff from having standing to bring suit at
3  all.
4       THE COURT:  Okay.  And response from the plaintiff,
5  please?
6       MS. HARTMAN:  Your Honor, this is Sarah Hartman again.
7       We believe that we've had conversations and shown
8  documents and the assignments to HPE enough to show them that
9  this is -- the case is probably broad and that there's no
10 jurisdictional standing issue.  We also just don't see still
11 how -- what exact international discovery they intend to seek
12 to explore that further.  They just haven't been able to
13 articulate that.
14      THE COURT:  Well, okay.  So I am typically completely okay
15 with either side beginning the process now of obtaining
16 international discovery because I know how long that takes.
17 But I can't really tell -- I'll tell you what I'm hearing is
18 that the defendant feels that there is discovery that needs to
19 be taken and the plaintiff is telling me they're unsure exactly
20 what that international discovery is.
21      So let me ask counsel for HP, have you specified to the
22 plaintiff exactly what discovery it is you would seek to take
23 if I allowed you to do it right now that was international?
24      MR. FRANZINGER:  Your Honor, what we've described is at
25 least we want to get into the documents that relate to these

1  transfers of rights from one prior owner to another.  In many
2  instances these are not the direct transfer from the most
3  recent owner to the plaintiff here but an earlier transfer of
4  rights before that between one or more of the foreign entities
5  in the countries that I mentioned.  And the rights that are
6  transferred to the plaintiff can be no greater than the rights
7  that were transferred to the prior owner, and so that's where
8  we want to get documents that we think reflect agreements
9  regarding those transfers that we believe could show the issues
10 that we're attempting to show here.
11         THE COURT:  Okay.  I'm going to start off by doing this,
12 but this may not accomplish global peace.  It sounds to me like
13 the defendant has not quite yet articulated specifically to the
14 plaintiff what it is that they are seeking.  I understand the
15 bucket that you're seeking, but I'm not sure that you have
16 provided to the plaintiff the exact documents that you're
17 seeking.  It seems to me, first, that if the plaintiff has any
18 document -- let me try -- start -- go about it like this.
19         First, if the plaintiff has any documents that go -- that
20 trace back the assignments or transfer or anything that would
21 be related to standing in this case, if the plaintiff has those
22 in its possession -- and by standing I mean something that
23 would affect my jurisdiction to handle the case at all, not
24 just with regard to damages but jurisdiction, then I want the
25 plaintiff to produce those documents now because if they're in

1   the plaintiff's possession, jurisdiction is obviously the first
2   thing I should take up.  If -- but what I'm going to do is
3   this.  Generally speaking, I am okay with either party taking
4   international discovery because it takes awhile to get that
5   done and I want it to be gotten done.  I'll -- and HP counsel
6   send to the plaintiff the specific discovery that you want to
7   send out to international targets.  I'll allow the plaintiffs,
8   once they receive that specific discovery that HP would like to
9   send, if you have some reason to believe it's not discovery
10  that would go towards the jurisdictional standing -- your
11  jurisdictional standing to bring this case in my court or in
12  the United States, then let my clerks know and we can take up
13  any specific issue with respect to that topic.  Otherwise, I am
14  okay with HP moving forward and sending out discovery that will
15  get the process started of obtaining these documents as soon as
16  they can.
17       Let me start with HP's counsel.  Is that a good first
18  step, or is there something more you think I ought to do now
19  that would help you?
20       MR. FRANZINGER:  Your Honor, I think that's a good step to
21  go forward at this point.
22       THE COURT:  And counsel for plaintiff?
23       MR. SHELTON:  Your Honor, I'm sorry to interrupt you.
24  This is Barry Shelton.
25       If I could just add one more note here.  I just wanted to

1 remind Your Honor that in the other WSOU cases that are handled
2 by a different law firm by the Etheridge Law Firm, Your Honor
3 has granted blanket pre-approval for foreign discovery as long
4 as that discovery was not received before the date of the
5 Markman hearing, and I understand Your Honor's ruling and that
6 makes perfect sense, but I just wanted to remind the Court
7 that in the other cases that there have already been, you know,
8 a large number of letters of request that have been approved by
9 the Court.
10     THE COURT: All right. Well, here's what I'm trying to
11 accomplish, and I would like you all to do the best you can to
12 help me accomplish this. I am sympathetic on the one hand to
13 HP getting this process started in a way that will get them --
14 will ensure that they have -- they have this information. I am
15 also sympathetic to my general standing rule that I don't allow
16 discovery prior to the Markman. So I am -- Mr. Shelton, I'm
17 happy for you to be involved in tailoring an agreement that's
18 similar to the other cases or any method you all want to where
19 you can come up by agreement with something that accomplishes
20 those dual objectives on my part. I don't really care what you
21 all work out. I do want HP to be able to begin the process now
22 with international third parties, but I don't want actual
23 discovery to take place until the Markman. So if you all think
24 you can, with those parameters, work this out, great. Try. If
25 you can't and there's some specific issue I can take up with

1  you, I'll do that whenever you call back.
2      Does that -- again let me start over.  Does that work for
3  HP?
4      MR. FRANZINGER:  Yes.  That works, Your Honor.
5      THE COURT:  And for plaintiff?
6      MS. HARTMAN:  Yes, Your Honor.  Thank you.  That works for
7  us.
8      THE COURT:  Okay.  Any other issues we need to take up?
9      MR. ROUSSEAU:  Your Honor, this is Timothy Rousseau on
10 behalf of plaintiff.  So there was one other disputed issue
11 that we wanted to raise, and that has to do with discovery
12 limits.
13     THE COURT:  Okay.
14     MR. ROUSSEAU:  HP has requested that all seven cases be
15 tried within the number of discovery requests that the Court
16 usually allocates to a single case, and we believe that that
17 would be overly narrow.  These are seven separate cases on
18 seven separate unrelated patents, and we believe that limiting
19 discovery to the amount of requests typically reserved for a
20 single case would be overly limited.  In the interest of some
21 efficiency, WSOU has proposed a similar scheme that was agreed
22 to between the parties in the WSOU v. Huawei case in which
23 there are some number of common requests and some number of
24 case specific requests.  We believe that a situation like that
25 would be more appropriate.

1   THE COURT: That at a macro level makes sense to me that
2   there will be common questions and then there will be
3   individual questions related to each of the -- I'm assuming --
4   I think I've talked to Josh about this, but essentially
5   whatever number of cases you have against HP that each one has
6   a single patent; is that correct?
7   MR. ROUSSEAU: That is exactly right, Your Honor.
8   THE COURT: Okay. So essentially what you're suggesting I
9   do is if there are -- there would be a number of common
10  interrogatories, I guess, but then there would be specific
11  interrogatories or requests for production that you'd want to
12  ask that would deal with each of the individual
13  interrogatory -- individual patents. I don't have a problem
14  with that. Let me hear from HP.
15  MR. FRANZINGER: Your Honor, we've given this issue more
16  consideration and we're willing to agree to the discovery
17  limits that the plaintiff proposed.
18  THE COURT: Okay. And let me tell you all how I tend to
19  handle things like this or like the number of hours for experts
20  or, you know, all the other stuff. I'm blessed in this job
21  because I have really good lawyers 98 percent of the time or
22  higher on both sides. And so if either side comes to me and
23  says, we messed up when we agreed that we would have X number
24  of interrogatories, that was too few, we need three or four, or
25  whatever it is, more and let us explain to you why, you can

1    expect I'm going to grant that.  If someone -- if you all
2    agree -- and I'm just picking a number.  You shouldn't take any
3    meaning out of this, but if you agree that the number of hours
4    for expert deposition is going to be limited to 70 hours, just
5    to pick a random number, and someone gets to 69 and can show me
6    that the depositions they've taken were all of 30(b)(6) people
7    and relevant witnesses and they need more time, you should
8    anticipate I'm going to give more time.  So -- and that's
9    bilateral.  That's not for one side or the other.  So do the
10   best you can to come up with these type of agreements and to
11   live up to them, but understand that as long as someone can
12   come in and show that they acted in good faith in trying to
13   adhere to these limits and they need some increase in them for
14   some specific reason to either on the plaintiff's side prepare
15   to prosecute its case or the defense side to defend the case,
16   you should anticipate I'm usually pretty receptive to that.  So
17   I'm happy that you all have agreed.  And is there anything else
18   that we need to take up?  I'll start with the plaintiff.
19        MR. ROUSSEAU:  Your Honor, those were the only disputed
20   issues.
21        THE COURT:  Okay.  And for HP?
22        MR. FRANZINGER:  Your Honor, this is -- this is not a
23   disputed issue.  This is an area of agreement, but we wanted to
24   get the Court's view on it.  For the purpose of venue transfer
25   motions, we anticipate there's going to be a common factual

1  basis across some of the cases and we expect that we could

2  consolidate the seven to somewhere between one and three

3  motions that would cover all of them, and we just wanted to see

4  if the Court would prefer that we do it that way to avoid

5  duplication.  We're also willing to file duplicate ones in

6  different cases if the Court prefers that.

7       THE COURT:  I would much prefer you not duplicate it.

8  That would make me much happier.

9       MR. FRANZINGER:  Good.  Great.

10      THE COURT:  And however -- and you may have seen recently

11 I made a change to my general standing rules that the

12 plaintiff -- if a defendant files a motion to transfer, the

13 plaintiff essentially has unlimited discovery to prepare for

14 their response to a motion to transfer which doesn't really

15 affect what your issue was.  I just wanted to make sure

16 everyone was aware of that recent change.

17      MR. FRANZINGER:  Yes, Your Honor.  And also on the subject

18 of timing, with the period for filing going over Thanksgiving,

19 it's impairing the fact gathering process a little bit, but our

20 opposing counsel has graciously agreed to a two week extension

21 to the deadlines.  So the parties plan to put that in our

22 agreed upon proposed schedule that we'll hopefully have for

23 you.

24      THE COURT:  Well, they were probably aware I'm usually

25 really a difficult person to live with and get those agreements

1   from.  So you're probably lucky that they went so easy on you
2   because I -- I'm usually pretty strict about that kind of
3   stuff.
4       At any rate -- I was kidding.  Occasionally people don't
5   know if I'm kidding or not.
6       I think that's great.  I think it's great that you all
7   worked this out.
8       And so is there anything else we need to take up for HP?
9       MR. FRANZINGER:  No, Your Honor.
10      THE COURT:  Okay.  Well, I hope you all have a wonderful
11  week and a wonderful Thanksgiving and I hope I get to see some
12  or all of you in real life sometime before the end of 2021,
13  which I'm not sure about anymore.  So you all have a wonderful
14  week with your family.  Take care.  Bye.
15      (Hearing adjourned at 1:53.)

1  UNITED STATES DISTRICT COURT )

2  WESTERN DISTRICT OF TEXAS    )

3

4      I, Kristie M. Davis, Official Court Reporter for the

5  United States District Court, Western District of Texas, do

6  certify that the foregoing is a correct transcript from the

7  record of proceedings in the above-entitled matter.

8      I certify that the transcript fees and format comply with

9  those prescribed by the Court and Judicial Conference of the

10 United States.

11     Certified to by me this 15th day of October 2021.

12

13                              */s/ Kristie M. Davis*
                                KRISTIE M. DAVIS
14                              Official Court Reporter
                                800 Franklin Avenue
15                              Waco, Texas 76701
                                (254) 340-6114
16                              kmdaviscsr@yahoo.com

17

18

19

20

21

22

23

24

25